UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**WILLIAM DEMON MCBRIDE**                                      **CIVIL ACTION**

**VERSUS**                                                                        **NO:    14-2969**

**JEAN LLOVET**                                                             **SECTION: "N" (4)**

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss (Rec. Doc. 14)** filed by the defendant, Jean Llovet ("Llovet"), seeking dismissal of the plaintiff, William Demon McBride's ("McBride") complaint. The motion is unopposed.

The case and the motion were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915(A)**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.

On January 15, 2015, the Court conducted a hearing pursuant to *Spears v. McCotter*[1], and its progeny, with the plaintiff participating by conference telephone call.[2]

### I.   Factual Background

#### A.   The Complaint

McBride was an inmate incarcerated in the Jefferson Parish Correctional Center ("JPCC").[3] At the time of filing this complaint, McBride was a pre-trial detainee awaiting trial for theft of a motor vehicle. McBride filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Llovet, who is the Director of Clinical Services at CorrectHealth, a

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] *See* R. Doc. 10. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

[3] On April 1, 2015, the Court was notified by the Jefferson Parish Sheriff's Office that the plaintiff was no longer incarcerated at the JPCC released by the judge on January 20, 2015. *See* R. Doc. 19.

private company that provides medical care to JPCC inmates. However, in reading McBride's complaint, he only alleges that Llovet denied his grievance about the injury he sustained to his hand, not that she provided medical care.

McBride alleged that on Monday, October 27, 2014, he was sent to the Medical Department at JPCC because an unidentified deputy closed his left hand in the cell door. *See* R. Doc. 1, at 4. McBride asserted that while he was at the Medical Department, an unidentified nurse informed him that he would visit with a physician who would treat the alleged injury to his hand. *Id.* McBride stated that on December 27, 2014, he had yet to receive the necessary medical treatment for his hand injuries. *Id.* at 5. Further, McBride stated that he has made multiple requests to nurses in order to be seen by a physician regarding his hand injuries, to no avail. *Id.* He does not, however, name as a defendant any of the nurses who actually provided medical care to him.

McBride seeks medical care and $50,000 in damages alleging that he was a victim of medical malpractice[4] due to Llovet's alleged failure to provide adequate medical care to his hand after a deputy closed the cell door on his left hand.[5] *See* R. Doc. 1, at 5. McBride further requests that Llovet be "placed on administrative leave without pay pending an investigation by the United States Marshals." *Id.* at 5.

## B.  The *Spears* Hearing

McBride testified that on October 27, 2014, he went to the medical department because his hand was changing colors and was advised by an unidentified nurse that he would be seen by

---

[4]McBride asserts a medical malpractice claim, but does not identify the nurses who provided him with medical care. Further, these unidentified nurses are not parties to the instant case. Moreover, the extent of Llovet's involvement was to respond to McBride's grievance. Therefore the medical malpractice state law claim will not be analyzed.

[5]McBride also noted that he had a separate lawsuit pending against the Jefferson Parish Correctional Facility addressing the issue of the deputy allegedly injuring his hand by shutting it in the door. Therefore, the alleged cause of McBride's injury is not the focus of this analysis.

a doctor for x-ray and further care.  McBride stated that he waited a while and other nurses told him there was a waiting list.  McBride further stated that he waited until the beginning of November and then filed a grievance to Llovet explaining everything that was going on with his hand.

After McBride filed the grievance, he testified that he was informed by Llovet that the nurse had instructed him, at the time of the incident, to put in sick calls if the injury had not improved.  McBride stated that he put in multiple sick call requests and he has yet to be seen by doctors and was still in pain as of the date of the *Spears* hearing.  Further, McBride testified that he followed the correct procedure for receiving medical attention.  McBride testified that he does not know what else to do and felt as if his rights were being violated due to the fact that he was not being given the appropriate medical attention.

McBride acknowledged that he was seen by unidentified nurses on the day of the alleged incident and was given Tylenol and two ice bags because his hand was swollen and blue.  He stated that the nurse who completed the assessment said she would put him on the doctor's list so that a doctor could determine if the hand was broken or fractured.

McBride also testified that he could close his fingers, but that it was painful to do so.  McBride further testified that as a result of the pain, he made repeated trips to the bathroom to run hot water on the injured hand because it constantly turned blue.

However, McBride stated that since the alleged incident with his hand on October 27, 2014, he had not seen or been directed to a doctor or practitioner and instead he was always directed to unidentified nurses.  McBride stated that although he never spoke directly to Llovet, she responded to the grievance he filed and said it was unfounded because the unidentified nurses at the clinic took the necessary precautions by advising him to put in sick calls if the injury to the hand did not improve.  McBride stated that he did not appeal the grievance because

he appealed a grievance for a previous incident and never received a response despite more than forty (40) days passing after he filed the appeal.

In addition to the foregoing, McBride also testified that he was in fear of his life due to threats from unidentified deputies that he allegedly received as a result of filing the subject lawsuit. When asked by the Court who was making the threats, McBride only responded that deputies at the correctional facility were threatening him. McBride testified that he could not recall the deputies' names but he indicated that he had written their names down on a list which was in his cell.

In connection with the *Spears* Hearing, the Court instructed McBride to provide the names of the deputies who made the alleged threats. The record, however, does not indicate that McBride submitted to the Court a list of the names of the deputies.

## II.     Standard of Review for Frivolousness

Titles 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding in *forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*; *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and

4

delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.     Failure to Exhaust Administrative Remedies

McBride filed a grievance with Llovet explaining the condition of his hand and requesting examination and treatment from a doctor. McBride indicated in the *Spears* Hearing that Llovet denied the grievance saying that it was unfounded because the nurses had taken the necessary precautions and advised him to make sick call requests if the hand had not improved. Further, McBride conceded in the *Spears* Hearing that he failed to exhaust the prison administrative process available to him by appealing the grievance.

Pursuant to 42 U.S.C. § 1997e(a), before a prisoner can file a § 1983 civil rights suit, "pre-filing exhaustion is mandatory." *Gonzalez v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012) (overruling *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998) where the Fifth Circuit held that complete exhaustion is required for compliance with the administrative grievance process). Moreover, to properly exhaust an administrative remedy means that "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules." *Woodford v. Ngo,* 548 U.S. 81, 89-95 (2006).

McBride conceded in his *Spears* Hearing that although he filed a grievance, he did not appeal the grievance. McBride explained that he did not comply with the appeal process for the complaint at issue because he appealed a grievance for a previous incident and more than forty (40) days had passed with no response. Construed broadly, McBride's reason for not appealing the grievance suggests that had he filed an appeal, it would have gone unanswered.

However, under *Woodford*, a prisoner plaintiff <u>must</u> exhaust administrative remedies before seeking redress in federal court under a § 1983 claim. *Woodford*, 548 U.S. at 91. Therefore McBride's claim against Llovet must be dismissed for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

### IV.     Recommendation

It is therefore **RECOMMENDED** that McBride's § 1983 claim against Llovet be **DISMISSED WITH PREJUDICE** as frivolous and for failure to exhaust administrative remedies pursuant to 28 U.S.C. § 1915(e), § 1915(A), and 42 U.S.C. § 1997e(a).

It is further **RECOMMENDED** that Llovet's **Motion to Dismiss (R. Doc. 14)** be **DENIED AS MOOT** as a result of McBride's § 1983 claim being dismissed as frivolous, and for failure to exhaust administrative remedies pursuant to 28 U.S.C. § 1915(e), § 1915(A), and 42 U.S.C. § 1997e(a).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 24th day of July 2015.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**